## 72144. LOWE v. THE STATE.
(346 SE2d 845)

SOGNIER, Judge.

Appellant was convicted of burglary and appeals.

1. Appellant contends the trial court erred by denying his request to charge on the lesser offense of criminal trespass. The evidence disclosed that a store known as The Video Connection was burglarized; entry was made by breaking through a sheetrock wall and ceiling. An unidentified man was seen dropping from the roof of the store building and running away from the store and across some railroad tracks. About an hour later police searching the area saw appellant walking across a ballfield near the railroad tracks. Appellant had a white powdery substance on his jacket and hands and he was arrested for burglary. A stereo-radio taken from the store was found in a ditch across the street from the store. A comparison of the powdery substance on appellant's jacket matched particles from the ceiling material, and the tread on appellant's shoe matched a footprint found inside the store.

Appellant argues that because no one saw him inside the store and no one identified him as the person seen dropping from the roof of the store, the jury could have believed that although he was the person who dropped from the roof, he was not the person who entered the store. Thus, argues appellant, his request to charge on the lesser offense of criminal trespass was justified. We do not agree.

Although appellant did not testify or present a defense, the State presented evidence that after appellant was arrested and had been advised of his *Miranda* rights, he stated that he had not committed the "armed robbery." When told about evidence found at the scene appellant stated that his shoes and jacket belonged to other persons. Further, when told that the store had been dusted for prints, appellant asked if the prints could not have been from a previous visit. Such statements can only be construed as a denial that appellant was at the store or involved in the burglary. A defendant cannot legitimately raise the issue of criminal trespass by claiming he was not present; rather, he would have to admit that he was present, but with

a less serious intent. *Weems v. State*, 172 Ga. App. 401, 402 (3) (323 SE2d 272) (1984). Thus, it was not error to deny appellant's request to charge on criminal trespass.

2. Appellant contends error in allowing Larry Peterson, a micro-analyst at the State Crime Laboratory, to give his opinion as to the cumulative effect of circumstantial evidence against appellant. In his testimony, Peterson compared physical materials from the store with materials found on appellant's clothing, and compared a footprint on a window inside the store with the tread on appellant's shoe. Peterson also testified that hairs found in a hat at the crime scene could have been appellant's hairs. Peterson then testified, over objection, that in his opinion it would be highly unusual to find all of these materials together in one place, and would be highly indicative that there had been contact between items associated with appellant and items associated with the crime scene. Appellant contends this was error because the expert's conclusion invaded the province of the jury and was an opinion as to the ultimate issue in the case.

Our Supreme Court has held that the correct rule concerning testimony of experts is as follows: "Expert opinion testimony on issues to be decided by the jury, even the ultimate issue, is admissible where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the average layman." *Smith v. State*, 247 Ga. 612, 619 (277 SE2d 678) (1981). Applying this rule to the facts of the instant case we find no error in admitting the expert's testimony. The average layman would not know it is "highly unusual" to find all such materials together in one place, nor would the average layman know how to interpret such evidence, i.e., that it was "highly indicative" there had been contact between items associated with appellant and items associated with the crime scene. Peterson was merely stating probabilities based on his expertise and interpreting the meaning of his analysis of various items of physical evidence, which is permissible under the rule in *Smith*.

3. Appellant contends the trial court erred by admitting into evidence his in-custody statements on the ground that his statements were not given freely and voluntarily.

After his arrest appellant was taken to the police station where Detective Ronald Eunice advised appellant of his *Miranda* rights. Appellant refused to sign a waiver of rights form, but stated that he had not committed the "armed robbery." Eunice asked no questions of appellant but departed and went to the crime scene. On his return Eunice again advised appellant of his *Miranda* rights, and informed appellant of what he had found at the crime scene; he also asked appellant if he would give the police some hair samples, and appellant refused. Eunice again asked no questions and started filling out a

form to obtain a search warrant. However, in response to Eunice's statements as to what he had found, appellant stated that the shoes he was wearing belonged to another person, and he had changed clothes with another person. When Eunice mentioned that the scene had been dusted for fingerprints, appellant asked Eunice if his (appellant's) prints could not be there as a previous shopper.

Appellant acknowledges in his brief that there is no evidence that appellant asked for an attorney, and that Eunice did not ask questions of appellant after Eunice knew that appellant refused to waive his rights. Appellant argues, however, that Eunice knew his statements about the crime scene would result in incriminating statements by appellant, and thus, constituted a "custodial interrogation" under the holding in *Rhode Island v. Innis*, 446 U. S. 291 (100 SC 1682, 64 LE2d 297). This argument is not well taken.

In *Innis* a suspect in crimes committed with a shotgun was arrested and advised of his *Miranda* rights, and stated he wanted to speak to a lawyer. The suspect was then placed in a police car and en route to the police station two policemen talked with each other concerning the possibility that one of the handicapped children from a school near the crime scene might find a weapon with shells and get hurt. The suspect heard the conversation and told the police to return to the scene so he could show the police where a shotgun was located. On arrival at the scene the suspect was again advised of his *Miranda* rights, which he understood, but stated he wanted to get the gun out of the way because of kids at the nearby school. Contrary to appellant's contention here, the court held that the policemen's actions did *not* amount to an interrogation in violation of the suspect's rights after he had asked for an attorney.

In the instant case appellant did not waive his rights, did not ask for an attorney, and was not questioned after refusing to waive his rights. Hence, appellant's contention that Eunice's comments were the "functional equivalent" of interrogation is without merit, as there is no indication that Eunice's comments were made to elicit incriminating statements from appellant. *Innis*, supra. See also *Williams v. State*, 249 Ga. 839, 842 (4) (295 SE2d 74) (1982).

*Judgment affirmed. Banke, C. J., and Birdsong, P. J., concur.*

DECIDED MAY 27, 1986 —
REHEARING DENIED JUNE 17, 1986.

*William C. Puckett, Jr.*, for appellant.
*Robert E. Wilson, District Attorney, Greg Futch, Madeline S. Griffin, Assistant District Attorneys*, for appellee.